James Gibson, J.
Motion by defendants Glens Falls Hospital and Tullio Mereu for an order dismissing this medical malpractice action, as to them, for failure to serve a complaint (CPLR 3012, subd [b]).
Cross motion by plaintiff for an order excusing her default and extending her time for service of the complaint (CPLR 2004).
The malpractice asserted occurred in early 1964, when plaintiff was 11 years old. This action was commenced by service of a summons, without a complaint, on defendant hospital on March 25, 1974 and defendant Mereu on May 7, *520 1974. Notices of appearance, with demands for service of the complaint, were served on behalf of defendant hospital on April 10, 1974 and on behalf of defendant Mereu on May 16, 1974. The complaint was served on defendants’ attorneys, by mail, shortly before March 6, 1976, or almost two years after defendants’ notice of appearance and demand, and was rejected as not timely served.
The sole ground asserted by plaintiff in opposition to the motion to dismiss and as the basis of her cross motion to excuse her default is that her attorney justifiably relied upon negotiations of settlement had with defendants’ liability insurance carrier as postponing the necessity of serving a complaint until a time about one month before the time service was actually attempted and rejected.[1] Defendants contend, however, that settlement negotiations were concluded and the insurance carrier’s offer of settlement withdrawn by the carrier’s letter of July 8, 1975, stating: "In reference to our outstanding offer to you in the amount of $2500. made on April 4, 1975, this is to advise that if Releases are not received at this office within ten days following posting of this letter you may consider our offer withdrawn.” The carrier is designated on its letterhead as "The Hartford” and the letter was signed "W. D. Jennings, Claims Supervisor”.
The letter of July 8, 1975 had been preceded by the carrier’s letter of April 4, 1975 embodying an offer of settlement. Plaintiff’s attorney’s associate, Mr. Newell, states in his affidavit:
"Your deponent does not recall whether talks were had between letters, but does know that this type of letter is commonly used to prompt a settlement. That it is your deponent’s recollection that subsequent to this letter, further settlement talks were had, as it was your deponent’s practice to frequently stop and speak with claims representatives at the offices of the Hartford insurance company as aforesaid. That during this time period, your deponent settled at least six separate cases and probably discussed six others. That it is your deponent’s recollection, that the instant case was also included in these, discussions. That sometime in the early part *521 of 1976, which I believe to be February, following a conference on another action involving the Hartford insurance company, your deponent spoke with Walter jennings and stated to him in words or substance that we should either settle between ourselves or let a jury decide the action, at which time, Walter jennings, stated that he had been advised by the attorneys for the defendants that the plaintiff was in default; and as such, he would stand on his letter of July 8, 1975. Shortly after being apprised of this information, your deponent caused to be issued the Complaint dated March 4, 1976, which was returned by the defendants and which precipitated the present motion.”
Mr. Newell’s affidavit, couched as it is in uncertain and indefinite language, is countered by Mr. Jennings’ affidavit of April 5, 1976,[2] unequivocally stating: that there was no response to the April 4, 1975 letter which tendered an offer of settlement (as to which nonresponse, Mr. Newell states he "does not recall” [supra, p 520]) "and the matter continued in abeyance without negotiations or any other response”; that there was never a response to his letter of July 8, 1975 withdrawing the settlement offer; that, according to his recollection, Mr. Newell was in the carrier’s office in December, 1975 or January, 1976 to interview another claims representative about another case and that Mr. Newell, on passing Mr. Jennings’ desk, "mentioned” the file in the instant case and Mr. Jennings stated to him that the file had been closed. As against this, Mr. Newell’s averments are simply that he "does not recall whether talks were had between letters”; that it is his "recollection” that talks were had later, but it must be noted that his "recollection” is not truly that, but rests on his "practice” to "frequently stop and speak with claims representatives” and in this instance there is no hint as to what *522 was said, if there were discussions, and no suggestion of any intraoffice note or memorandum thereof or of any report to his associate, Mr. Hall, or to their client. Mr. Newell’s clearly conclusory and nonspecific statements as to the carrier’s "constant assurances” that settlement efforts would "be exhausted” cannot, of course, be given evidentiary weight; and the carrier doubtless considered that all efforts were in fact exhausted when its offers met with no response. It is important to note that plaintiff makes no claim of any response to the April 4, 1975 written offer or to the July 8, 1975 letter which kept the offer alive for 10 days, pending final withdrawal at the end of that time. Mr. Newell’s equivocal, nonspecific averments, candid and truthful as they doubtless are, simply do not rise to the level of proof of a quality sufficient to satisfy plaintiff’s burden of explanation for the delay; and particularly so, in the light of the terse, simple and unequivocal language of the July 8, 1975 letter. Whatever the attorney’s impression of that letter, elementary prudence required either the drafting of the uncomplicated complaint that was subsequently drawn or some other action in response to the carrier’s letter.
No support for plaintiff’s motion is to be found in the statements in Mr. Newell’s affidavit (which seem to be advanced as a separate but subsidiary ground) that his "recollection” was that Mr. Jennings and he agreed that "settlement negotiations should be exhausted before further action” and that the carrier gave "further assurances that settlement attempts would first be exhausted”. Whatever effect, if any, might otherwise be given this nebulous arrangement, it is obvious, first, that either party was entitled to form a judgment as to when efforts at compromise should be "exhausted” and, second, that upon plaintiff’s attorney’s failure to respond to the April 4, 1975 written offer or to the same offer as extended 10 days from the date of the July 8, 1975 letter, the carrier was fully warranted in concluding that all efforts had indeed been exhausted.
Given the conceded premise that with his medical expert’s opinion in hand, plaintiff’s attorney was at all times able to prepare the uncomplicated complaint that he did eventually prepare, his inaction following his receipt of the April 4, 1975 letter and his similar inaction, for almost eight months, following the July 8, 1975 letter, might well be deemed law office failure on account of which, as plaintiff’s brief concedes, *523 no remedy lies. But, for purposes of the argument at least, it will be assumed that the record demonstrates something other than a breakdown in law office management. The case then turns wholly upon the issue in respect of the alleged negotiations, as hereinbefore and hereinafter discussed.
Entirely unpersuasive are Mr. Hall’s averments as to a pattern of conduct commonly in vogue as between carriers and lawyers, according to which spoken and written words are to be interpreted, not in the light of their plain meaning, but according to an esoteric code or index of gambits. But the Appellate Division, Third Department, has already disposed of this claim of custom, holding that the "contention * * * that a delay of three or four months is the general custom among lawyers in the locality is inadequate to justify ignoring the plain requirements of the Civil Practice Law and Rules” (Johnson v Johnson, 45 AD2d 899).[3] Further, and in the existent practice of almost complete disclosure, the nebulous arguments as to the tactical reasons for withholding a complaint while settlement talks proceed are as unconvincing as they are extra-legal. In this case, as is clear, all the information necessary to the preparation of a complaint was before plaintiffs attorney when the bare summons was served and, most certainly, when notices of appearance and demands were thereupon served; and this court finds no satisfactory reason for the delay of two years that ensued.
Nevertheless, if consideration be given plaintiff’s argument that the delay is excusable by reason of supposed negotiations, for some period at least, that explanation is unavailing after the expiration of the 10-day period that was clearly, firmly and unequivocally specified in the carrier’s letter of July 8, 1975; and the delay of almost eight months that thereupon ensued cannot, under the authorities, be excused.
Although the statute and the cases construing it are quite clear, the nature of the arguments in this case might suggest that a brief restatement of the rule, particularly as obtaining in the Third Department, may not be amiss.
Thus, the governing statute: "(b) Demand for complaint. If the complaint is not served with the summons, the defendant may serve a written demand for the complaint. If the com *524 plaint is not served within twenty days after service of the demand, the court upon motion may dismiss the action.” (CPLR 3012, subd [b].) And the definitive case law: "The determination of a motion to dismiss for failure to serve a timely complaint pursuant to CPLR 3012 (subd. [b]) rests in the sound discretion of the court. (Lehigh Val. R. R. Co. v North Amer. Van Lines, 25 AD2d 923.) A denial of such a motion must, however, be based upon a reasonable excuse presented for the delay. (Fisher v Tier Oil Co., 40 AD2d 930; Hughes v Seven-Up Bottling Co. of Binghamton, 39 AD2d 624.)” (Ellis v Board of Educ., 46 AD2d 840.) In the cited Lehigh case (supra, 924), the court said, "We find consistently the reference to 'inordinate’ or 'prolonged’ delays, and it is clear that the actual length of the delay, although not contained as a test in the statute, is an overriding consideration and is at the root of the requirement that the plaintiff justify his case as well as his delay. [Citations.]”
The case at bar involves an over-all delay of nearly two years, or of eight months if the court should find excusative the asserted settlement negotiations prior to July 18, 1975— on which date they terminated, as hereinbefore found. The comprehensive and oft-cited opinion by (then) Mr. Justice Breitel in Sortino v Fisher (20 AD2d 25)[4] is helpful with respect to this as well as other aspects of the case. In Sortino the delay was of but 5 months — here it was of 8 months, if not of 23 — and the court said (p 29): "That settlement negotiations have occurred between representatives for defendant and plaintiff is sometimes a reasonable excuse for not taking any particular action while the negotiations are pending. The excuse, however, ceases to have effect within a brief interval after the last communication (e.g., Wilson v. Whitehall Corp., 20 A D 2d 525, supra, decided herewith; Krell v. Pelham Syndicate, 14 A D 2d 845; Patron v. 112 East 111th St. Corp., 14 A D 2d 843; Trapani v. Samuels, 3 A D 2d 861 [2nd Dept.], mot. for lv. to app. den. 3 N Y 2d 931; Fast v. Meenan Oil Co., 1 A D 2d 889 [2nd Dept.]; Mann v. Nednil Terrace Corp., 35 Misc 2d 182 [App. Term, 1st Dept.]; cf. Maizonet v. Lee Properties, 11 A D 2d 667)”.
The cases thus cited in Sortino lend no support to plaintiff’s *525 cross motion. So, in Wilson, the claim of settlement negotiations was found "unsatisfactory”; in Krell, it was said, "Settlement negotiations are in themselves an insufficient excuse. [Citations.] Moreover, the papers disclose defendant’s refusal to settle the case at least eight months before the motion to dismiss was made” [emphasis supplied; and "eight months” period is here involved]; in Patron, it was said that the "inordinate delay [of 27 months] cannot be excused because of settlement discussion”; in Trapani, the court held: "The disputed claim of continuing settlement negotiations is not a sufficient explanation for the delay”; in Fast, involving settlement negotiations and a delay of 18 months after issue joined and of 10 months after service of a bill of particulars, plaintiffs "failed to sustain the burden of showing that the neglect was not unreasonable * * * and * * * that the action has merit”; in Mann, the Appellate Term stated, "Our court has consistently held that settlement negotiations do not suffice to excuse an unwarranted delay in the prosecution of an action”; and in Maizonet, "vague allegations regarding settlement discussions” did not excuse a 28-month delay.
In sum, then, plaintiff’s papers fail to establish any "communication” (Sortino, supra, p 29) in the nature of negotiations for approximately eight months prior to service of the complaint. Thus, if the inexcusable delay is not the full 23 months that elapsed after service of notice of appearance and demand, it is, in the view of the case most favorable to plaintiff, certainly of eight months. The eight months’ period was far more than "a brief interval after the last communication” (Sortino v Fisher, 20 AD2d 25, 29, supra); and must, by any reasonable standard, be accounted "inordinate” (Lehigh Val. R. R. Co. v North Amer. Van Lines, 25 AD2d 923, 924, supra) in the light of the delays involved in Sortino (supra [five months]) and in the most recent Third Department case of Johnson v Johnson (45 AD2d 899, supra [four months]).
Motion granted. Cross motion denied.

. There is not involved here the ground sometimes urged in cases such as this, of plaintiffs inability to obtain a medical opinion supportive of her claim of malpractice and necessary to frame her complaint, as plaintiffs papers include a comprehensive opinion of liability furnished by a physician on February 27, 1974, just prior to . service of the summons.

. Plaintiffs attorney strenuously objects to defendants’ attorneys’ submitting an additional affidavit by Mr. Jennings without permission, some weeks after the hearing of the motion. The court does not approve the filing of this affidavit, without permission, but is bound to note that it does not bear upon the issues which the court finds relevant and that it has not been considered. Further, in point of fact, it should be clear from this memorandum decision that the motion turns upon the infirmities manifest in Mr. Newell’s affidavit, as respects the burden of explanation imposed upon plaintiff by her motion, and upon the legal principles inherent in plaintiffs contentions, and not upon Mr. Jennings’ averments. Indeed, the court would have taken testimony had its examination of the papers disclosed a substantial issue of fact; and, upon the oral argument, the court informed counsel that in such event they would be notified accordingly and asked to produce Mr. Newell and Mr. Jennings for examination.

. Discussing Johnson and the four months’ delay there involved, it has been suggested "that the court is becoming ever less patient with these delays in complaint service.” (Supplementary Practice Commentary by David D. Siegel, McKinney’s Cons Laws of NY, Book 7B, 1975-1976 Suppl, under CPLR 3012, p 22, C3012:ll.)

. Although Sortino involved want of prosecution (Civ Prac Act, § 181, now CPLR 3216) the principles there enunciated are recognized as equally applicable to motions such as this, under CPLR 3012 (subd [b]) (see, e.g., Johnson v Glens Falls Hosp., 39 AD2d 802; Rabetoy v Atkinson, 49 AD2d 691).